ANDY MONTEITH and ANDY BRYSON, Together with All Other Citizens Who Wish to Make Themselves Parties to This Action, in Jackson County, v. THE BOARD OF COUNTY COMMISSIONERS OF JACKSON COUNTY, Composed of S. C. COGDILL, THOMAS BARRETT, and S. M. PARKER.

(Filed 31 January, 1928.)

1. Statutes—Repeal and Revival—"Elections."

When a statute, local to a county, as to the holding of an election upon the question of the stock law in any well defined portion thereof, particularly prescribes the method and machinery by which the election shall be held, a general statute requiring the Australian ballot to be used does not repeal the provisions of the local statute unless by express words or necessary implication.

2. Elections—Description of Territory—"Stock Law."

Under the facts of this case: Held, there was sufficient evidence that the definition of the territory voting for the stock law in a certain section of Jackson County was sufficiently certain under the requirements of a public-local law relating to that county, and that the description was sufficiently definite.

APPEAL by defendant from *Sink, Special Judge,* at June Special Term, 1927, of JACKSON. Reversed.

The facts will be set forth in the opinion.

*Bryson & Bryson and W. R. Sherrill for plaintiffs.*
*Sutton & Stillwell and Alley & Alley for defendants.*

CLARKSON, J. This is an injunctive proceeding, brought by plaintiffs against defendant, board of commissioners for the county of Jackson, to restrain and enjoin it from declaring the result of a stock law election held 3 May, 1927. A restraining order was issued and the proceeding was continued from time to time and heard at June Special Term, 1927, of Jackson Superior Court. The court below continued the restraining order, or injunction, in force until the final hearing of the proceeding, on the ground that the election "was not held as by law provided." The defendant excepted, assigned error and appealed to the Supreme Court.

The parties agreed to the following statement of case on appeal: "The General Assembly at the Extra Session of 1913 (Public-Local Laws, ch. 69), passed a special stock law act for Jackson County, therein providing the machinery under which elections thereunder should be held. The General Assembly of 1927 (Public-Local Laws, ch. 411) passed an act, providing that territories less than the county, or less than a township, might organize and vote for the establishment of a stock law within such boundary, and the defendant contended on the hearing that the stock law election in question was held under and by virtue of the provisions of the two above-mentioned statutes, and the plaintiffs, on the other hand, contended that the Australian Ballot Law, which was enacted for Jackson County at the 1921 session of the General Assembly was exclusive, and that any election attempted to be held under the two statutes first above mentioned was a nullity and void. And that the boundary was not a well described and defined boundary as set out in the notice."

No complaint was filed. The court below found no facts. The cause was heard on conflicting affidavits submitted by both sides to the controversy.

Public-Local Laws of 1927, ch. 411, is as follows: "Section 1. That chapter sixty-nine of the Public-Local Laws of Extra Session of one thousand nine hundred and thirteen, and chapter four hundred and eight of the Public-Local Laws of one thousand nine hundred and seventeen of the General Assembly be and the same is hereby amended by adding thereto the following: That any well defined and described portion of any township in Jackson County which has not heretofore come

under the benefits of said chapters, may at any time, upon petition of the majority of the qualified voters therein to the commissioners of Jackson County, hold an election under and as provided in said chapter, and upon the filing of a petition from any well defined part or portion of any township, it shall be the duty of the board of commissioners of said county to canvass the same, and if they shall find that a majority of the qualified voters therein have signed such petition, then it shall be their duty to order an election as is provided in said chapters for townships; and if at such an election a majority of the qualified voters in such well defined portion or part of any township shall vote for 'exclusive stock law,' then the same shall be reported to the commissioners as in said chapter sixty-nine and four hundred and eight are provided, and such portion or part of any township shall have the full rights and benefits of the exclusive stock law as provided for in chapter sixty-nine and four hundred and eight. Sec. 2. That all laws and clauses of laws in conflict with this act are hereby repealed."

Public-Local Laws of 1913, ch. 69, provides the machinery under which exclusive stock law elections can be held for "the whole of such township as its boundaries may then be constituted." Public-Local Laws of 1917, ch. 408, made certain amendments to the above law of 1913. Public-Local Law of 1927, amends both of the above laws and authorizes the exclusive stock law elections to apply *"to any well defined and described portions of any township in Jackson County."* This act in clear language says: "Hold an election under and *as provided in said chapters.*" In unmistakable words says: *"That all laws and clauses of law in conflict with this act are hereby repealed."*

The plaintiffs contend that the question involved is: "Does the Australian Ballot Law apply in Jackson County and repeal the Public-Local Laws of 1913?" We think not. The acts, etc., in relation to the Australian Ballot Law is as follows:

Public-Local Laws 1917, ch. 606, "An act to provide the Australian Ballot" was made applicable to Buncombe, Henderson and Madison counties. Public-Local Laws 1921, ch. 269, makes the above Australian Ballot Act applicable to Jackson County, "and that all elections held in said county after ratification of this act shall be held under the provisions of the laws herein specified. Sec. 2. That all laws and clauses of laws in conflict with this act are hereby repealed."

The repealing clause language above in the Jackson County Act is the same as in the 1917 law applicable to Buncombe, Henderson and Madison counties.

Section 5928 of the Consolidated Statutes of 1919 reads as follows: "The county board of elections in each county shall appoint all registrars and judges of election in their respective counties and fill vacan-

cies except as herein provided." That section 1 of chapter 606, Public-Local Laws of 1917, which was made applicable to Jackson County by chapter 269 of the Public-Local Laws of 1921, reads as follows: "All ballots cast in any election in this State, general, special, or primary, or in any vote upon a constitutional amendment, or questions submitted to the people, whether it be a State, district, county, township, or municipal election or vote, shall be prepared, printed and distributed in the manner hereinafter set forth and in no other." That secs. 3, 4, 5, 6, 7, 8, and 9, of the Public-Local Laws of 1917, applicable to Jackson County requires the ballots used at said election to be dated and signed by the chairman of the county board of elections of Jackson County, which in the case at bar was not done. The county board of elections of Jackson County had no meeting, made no order, nor did anything else whatsoever in connection with the appointments of registrar and judges, advertising the election, furnishing the booths, authorizing the printing and distribution of ballots or sample ballots, nor did any other thing with reference to said election. No demand was made upon the board of elections of Jackson County to call an election as set forth by the statutes cited. That section 12 of the Public-Local Laws of 1917, chapter 606, reads as follows: "That if any question or proposition shall be submitted to the people of any township, district or other political subdivision, a ballot shall be used conforming as nearly as possible to the rules prescribed for the official ballot on constitutional amendments. The county board shall prescribe the rules therefor, if it be a question submitted to a township or subdivision within the county, and the State Board of Elections, if it be a question submitted to a subdivision covering all or more than a county." That section 17 of the Public-Local Laws of 1917, ch. 606, made applicable to Jackson County by chapter 269 of the Public-Local Laws of 1921, reads in part as follows: "The county board of elections in each county shall be charged with the duty of preparing, printing and distributing all ballots for general, special and primary elections and all ballots for constitutional amendments or propositions submitted, except ballots for city or town election or votes, etc. . . . (Sec. 43(a) *Provided,* the provisions of this act shall not apply to any public graded high school, or other school election, but that the present laws providing for such elections shall remain in full force and effect." We give full extracts from the general statutes which plaintiffs contend that the exclusive stock law election should have been held under, but we think, beyond question, the special acts, *supra,* applicable.

The principle is well settled in 36 Cyc., 1092(2), as follows: "When the provisions of a general law, applicable to the entire State, are repugnant to the provisions of a previously enacted special law, applicable to

a particular locality only, the passage of such general law does not operate to modify or repeal the special law, either in whole or in part, unless such modification or repeal is provided for by express words, or arise by necessary implication." *Felmet v. Comrs.,* 186 N. C., 251, and cases cited.

The Public-Local Laws of 1927, ch. 411, quoted, *supra,* the last expression of the General Assembly on the subject, specifically requires the election to be held under and as provided by Public-Local Laws, Extra Session, 1913, ch. 69, etc., and that all laws and clauses of laws in conflict with that act are repealed.

The next question involved: Were the boundaries of the Hamburg Township Stock Law election sufficiently defined and described and proper notice thereof given as by law required? We so hold. As previously stated, the court below found no facts. B. Norton, in his affidavit, states that he is 71 years old, a resident of Hamburg Township since his birth, a freeholder living in the exclusive stock law territory in controversy; that he is a civil engineer, familiar with the lines, has good knowledge of the property lines, and, as well as natural boundaries, and testified, in substance, that the boundaries were sufficiently defined and described.

To the same effect was the affidavit of H. C. Moss, "well known to all the people of said township."

The statute says, "any well defined and described portion of any township in Jackson County." We have read carefully the description set out in the record of the exclusive stock law territory in controversy. It appears to be well defined and described, and if not in its entirety certain, can be readily made certain. *Id certum est quod certum reddi potest. Newson v. Earnheart,* 86 N. C., p. 391.

We think proper notices were substantially given of the boundaries as required by law. No one could be misled by the notice, and there is no evidence to that effect. We think the special acts applicable were in all respects substantially complied with.

It is not disputed that in the election held 3 May, 1927, in the exclusive stock law territory in controversy, 126 qualified voters voted for "Exclusive Stock Law" and 16 voted "No Stock Law."

"The ultimate conclusions from the authorities is thus stated in 10 A. & E. Enc. (2 ed.), at pp. 755, 767: The general principles to be drawn from the authorities are, that honest mistakes or mere omissions on the part of the election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not avoid an election, unless they affect the result, or at least render it uncertain. But if the irregularities are so great that the election is not conducted in accordance with law, either in form or substance, and there are matters of sub-

stance that render the result uncertain, or where they are fraudulent and the result is made doubtful thereby, the returns should be set aside." *Hill v. Skinner,* 169 N. C., at p. 412. See *Plott v. Comrs.,* 187 N. C., p. 125; *Flake v. Comrs.,* 192 N. C., 590.

From the entire record we do not think a prima facie case has been shown to entitle plaintiffs to injunctive relief. *Plott v. Comrs., supra; Wentz v. Land Co.,* 193 N. C., p. 32. It may not be amiss to state that plaintiffs in their brief only referred to the statutes quoted, but cited no authorities to support their contention.

For the reasons given the restraining order, or injunction, is dissolved.

Reversed.